IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANK GORDON KECKEISSEN** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| v. | : | NO.  05-4290 |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA** | : | |
| **Defendant.** | : | |

**O R D E R**

**AND NOW**, this 22nd day of December, 2005, upon consideration of plaintiff's pro se First Amended Complaint for Damages and Injunctive Relief (Document No. 9, filed December 9, 2005) against Commonwealth of Pennsylvania, **IT IS ORDERED** that plaintiff's First Amended Complaint for Damages and Injunctive Relief is **DISMISSED** for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

**IT IS FURTHER ORDERED** that the Clerk of Court shall **MARK** the case **CLOSED** for **STATISTICAL PURPOSES**.

**M E M O R A N D U M**

Plaintiff Gordon Keckeissen has filed a First Amended Complaint against the Commonwealth of Pennsylvania, alleging that the state court violated his rights under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., in adjudicating custody rights to his minor children.[1]  Because the Court finds that these claims are barred by the Rooker-Feldman doctrine, plaintiff's First Amended Complaint is dismissed for lack of subject matter

---

[1] At the time plaintiff's custody suit began, both of his children were minors.  Plaintiff's older child is now an adult.  Compl. ¶ 31.

jurisdiction.[2]

## I. BACKGROUND

The following facts are taken from plaintiff's First Amended Complaint.

Since 2001, plaintiff has been engaged in a protracted and bitter custody dispute with his former wife. Prior to her suit for divorce, plaintiff's wife allegedly joined a cult-like church and essentially abandoned her family. Compl. ¶ 14. The stress of trying to persuade his wife to leave the church while caring for his children has caused plaintiff to suffer disabling emotional and mental trauma. Id. ¶ 16. Plaintiff alleges that he is disabled by virtue of suffering from post-traumatic stress disorder, major depressive episode, dysthymic disorder (chronic depression), and other related infirmities. Id.

By the time of plaintiff's custody trial in the Bucks County Court of Common Pleas in April 2003, his counsel had withdrawn due to lack of payment. Id. ¶ 30. Plaintiff informed the trial judge of this fact and asked for an extension of time under the ADA to prepare for the trial. Id. ¶ 31. Included in this request to the Bucks County court was documentation of plaintiff's disabilities. Id. Plaintiff's request was refused, and the judge allegedly mocked plaintiff's disabilities on the record. Id. Plaintiff further alleges that the judge retaliated against him for asserting his ADA rights by stripping him of all custody rights to his children and giving his wife sole legal and physical custody until plaintiff could continue the trial. Id.

The custody order entered by the Bucks County judge was an interim order. Compl. ¶ 31. Plaintiff appealed this decision, but, because the order was not final, the appeal was

---

[2] The Rooker-Feldman doctrine stems from two Supreme Court cases decided sixty years apart. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

dismissed as interlocutory.  Id. ¶ 32.  Plaintiff further alleges that he has not been allowed to testify or present evidence in his custody case since March 2005 when his appeal was dismissed. Id.  Apparently, since April 2003, there has been no change in plaintiff's custody situation, and his former wife retains custody of their younger child.[3]  Id. at ¶ 31.

Plaintiff names he Commonwealth of Pennsylvania as the defendant.[4]  Id. ¶ 10.  Plaintiff requests, "to the extent permitted by applicable law," for injunctive relief, the appointment of counsel (either by the Commonwealth or by the federal government), compensatory, punitive, and statutory damages, and attorneys' fees and costs.  Id. at 25-26.

Plaintiff's initial Complaint, which focused on his custody suit, was dismissed by Order on August 23, 2005 as barred under the Rooker-Feldman doctrine.  To the extent that plaintiff asserted an ADA claim in his initial complaint, that claim was dismissed as incomprehensible. Plaintiff was given leave to file an amended complaint under Title II of the ADA in the August 23, 2005 Order.

## II. ANALYSIS

As the Court previously held in its August 23, 2005 Order, the Court does not have subject matter jurisdiction to hear plaintiff's claims because they are again barred by the Rooker-Feldman doctrine.  See Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 419 (3d Cir. 2003) ("A finding that Rooker-Feldman bars a litigant's federal claims divests a District Court of

---

[3] Plaintiff's older child is now an adult and apparently attending an out-of-state college. Compl. ¶ 31.

[4] In the caption to his case, plaintiff names as defendant(s) "Commonwealth of Pennsylvania, and those courts, members of the judiciary, and/or such other services, programs or activities thereof which are charged with, but failed to, inter alia, accommodate Plaintiff's disabilities."

subject matter jurisdiction over those claims."). A court may raise subject matter jurisdiction concerns sua sponte. Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 77 (3d Cir. 2003).

A federal court lacks subject matter jurisdiction under Rooker-Feldman in two circumstances. The first is where the federal claim was "actually litigated" in state court prior to the filing of the federal claim. The second is where the federal claim is "inextricably intertwined with the state adjudication" so that federal relief can only be predicated "upon a conviction that the state court was wrong." Desi's Pizza, 321 F.3d at 419. Plaintiff's federal claim in the instant case is that the Bucks County judge committed two different violations of the ADA. First, the judge refused to grant plaintiff a continuance, which plaintiff alleges violated his rights under Title II of the ADA.[5] Second, the judge allegedly retaliated against plaintiff for asserting his ADA rights.[6]

Plaintiff's ADA claims have not been litigated in the state court custody proceedings; therefore, this case is not within the first category of cases barred by Rooker-Feldman. See

---

[5] Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity of be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff appears to be arguing that the judge's failure to grant him a continuance has prevented him from presenting his custody case and thus obtaining the benefits of the court's services. The Supreme Court recently held that Title II applies to the courts where the fundamental right of access to the courts is implicated. Tennessee v. Lane, 541 U.S. 509 (2004).

[6] The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). While most retaliation cases are brought under Title I of the ADA in an employment context, they can also be brought under Title II. See Higdon v. Jackson, 393 F.3d 1211, 1218-19 (11th Cir. 2004) ("[§ 12203(a)] allows a complaint of retaliation against a public entity or its employees governed by Title II in the same manner that this provision allows a complaint of retaliation against an employer under Title I.").

Desi's Pizza, 321 F.3d at 420-21 (finding that federal claim was not "actually litigated" in state court proceedings where plaintiffs made no reference to federal claims in filings in state court and state court did not discuss any issues of federal law); Parkview Assoc. P'ship v. City of Lebanon, 225 F.3d 321, 325-26 (3d Cir. 2000) (finding disability claims not actually litigated by state court because plaintiffs did not present these claims to the state court).

With respect to the second category of cases barred under Rooker-Feldman, a plaintiff's claim for relief in federal court is "inextricably intertwined" with a state court proceeding when in order to grant the relief sought by the federal plaintiff, the federal court must determine that the state court judgement was erroneous. FOCUS v. Allegheny Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996). "[U]nder Rooker-Feldman, we must pay close attention to the relief sought by the federal-court plaintiff." Bianchi v. Rylarrsdam, 334 F.3d 895, 900 (9th Cir. 2003). If the requested relief requires a determination that the state court's decision was wrong, then the federal claim is inextricably intertwined with the state court case. FOCUS, 75 F.3d at 840.

Plaintiff asks, "to the extent permitted by applicable law," for injunctive relief, the appointment of counsel (either by the Commonwealth or by the federal government), compensatory, punitive, and statutory damages, and attorneys' fees and costs. Compl. at 25-26. Any injunctive or monetary relief awarded to plaintiff would require the Court to first reach the conclusion that the state court judge wrongly denied plaintiff's request for a continuance, and/or that the judge should not have awarded plaintiff's wife full physical and legal custody of their children. Thus, it is abundantly clear that plaintiff is seeking relief that is inextricably intertwined with the state court custody proceedings. For that reason, the Court lacks subject matter jurisdiction under Rooker-Feldman. In so ruling the Court notes that the issues in

5

plaintiff's case – domestic relations and child custody issues – are almost exclusively the province of the states.  Indeed, the Supreme Court observed many years ago that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the law of the States and not to the laws of the United States." In re Burrus, 136 U.S. 586, 593-94 (1890); see also Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 13 (2004) ("We have also acknowledged that it might be appropriate for the federal courts to decline to hear a case involving elements of the domestic relationship, even when divorce, alimony, or child custody is not strictly at issue.").

### III.  CONCLUSION

The Court concludes that under the Rooker-Feldman doctrine it lacks jurisdiction over the subject matter of this case.

**BY THE COURT:**

_____
**JAN E. DUBOIS, J.**